UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

MELODY WEST and MARK WEST,   No. 2:09-cv-02817-MCE-GGH

    Plaintiffs,

  v.   MEMORANDUM AND ORDER

ERIC H. HOLDER et. al.,

    Defendants.

----oo0oo----

Through the present action, Plaintiffs Melody West and her father, Mark West, ("Plaintiffs") seek declaratory relief from the Department of Homeland Security's ("DHS") denial of Melody West's application for adjustment of her immigration status. Plaintiffs also seek a writ of mandamus compelling Defendants Eric H. Holder, U.S. Citizenship and Immigration Service ("USCIS"), Janet Napolitano, Alejandro Mayorkas, and Susan M. Curda (collectively "Defendants") to complete the adjudication of Melody West's application for lawful permanent residence, as well as attorney's fees and costs.[1]

---

[1] Because oral argument will not be of material assistance, the Court orders this matter submitted on the briefing. E.D. Cal. Local Rule 230(g).

1

Presently before the Court are Plaintiffs' Motion for Summary Judgment as well as Defendants' Cross-Motion for Summary Judgment. For the reasons set forth below, both motions are denied.

## BACKGROUND[2]

The present dispute centers around the immigration status of Plaintiff Melody West, a citizen of Canada.  On January 3, 2008, Melody and her father Mark, a United States citizen living in Canada, were detained while crossing the border between the United States and Canada near Seattle, Washington.  During interrogation by Customs and Border Protection ("CBP"), Melody initially indicated that she was entering the United States to attend a two-week yoga class in Nevada City, California and that afterwards she would return to Canada.  (Defs.' Cross-Mot. Summ. J. 4.)  When CBP contacted the yoga school, they discovered that Melody had been living in Nevada City since 2006, contrary to her claims that she had been living in Canada.  (Id.)  When confronted with this information, Melody maintained that she had been living in Canada, not the United States, between 2006 and 2007.  (Id.)  Melody ultimately signed a sworn statement, however, in which she admitted that she had been living in the United States since 2006, and that her father had coached her to provide answers to immigration officials.  (Id. at 5.)

---

[2] The facts in this section are taken from the Plaintiffs' and the Defendants' Statements of Undisputed Material Facts unless otherwise noted.

1  Melody was then served with a Notice to Appear for removal
2 proceedings, charging her with fraud in violation of 8 U.S.C.
3 § 1182(a)(6)(C)(1).  The notice provides that "you are an alien,
4 who, by fraud or wilfully misrepresenting a material fact, seeks
5 to procure (or has sought to procure or has procured) a visa, or
6 other documentation, or admission into the United States or other
7 benefit provided under this Act."  According to the notice,
8 Melody had misrepresented an intent to return to her permanent
9 residence in the United States.
10  Melody was conditionally released into the United States
11 pending hearing on her Notice to Appear.  On June 17,2008 she
12 appeared in Immigration Court and was granted leave to file a
13 motion to terminate removal proceedings, which she did on
14 July 14.  This motion challenged the Notice to Appear and the
15 fraud charges as "facially defective."  (Pls.' Mot. Summ. J. Ex.
16 A.)  The DHS opposed this motion, but in its opposition withdrew
17 the charge of fraud without prejudice and substituted a lesser
18 charge under 8 U.S.C. § 1182 (a)(7)(A)(i)(I) (immigrant not in
19 possession of a valid unexpired immigrant visa, reentry permit,
20 border crossing card, or other valid entry document).  Id.  On
21 September 4, 2008, in light of DHS's withdrawal of the fraud
22 charge, the Immigration Judge denied the motion to terminate
23 removal proceedings.
24  In November 2008, Melody moved to administratively close the
25 proceedings in order to file an application for adjustment of
26 status as the daughter of a U.S. citizen.  This motion was
27 unopposed by DHS and granted by the Immigration Judge.
28 ///

3

Melody's application for adjustment of status, however, was denied by the USCIS, a division of DHS, on August 27, 2009. The denial stated two grounds for this decision: "you are ineligible for adjustment of status under INA § 245(a) [8 U.S.C. § 1255(a)], and you are inadmissible to the United States pursuant to INA § 212(a)(6)(C)(I) [8 U.S.C. § 1182(a)(6)(C)(i)]." (Defs.' Cross-Mot. Summ. J. 6.) As to the first ground, USCIS noted that only aliens who are "inspected and admitted or paroled" into the United States are eligible to apply for an adjustment of status. (Id.) USCIS asserted that Melody was conditionally released into the U.S., which is not "parole" for the purposes of adjustment of status. (Id.) As to the second ground for denial, USCIS found that Melody "inadmissible" pursuant to 8 U.S.C. § 1182(a)(6)(C)(I) due to her failure to timely retract misrepresentations made during questioning by immigration officials on January 3, 2008. (Id.)

After the denial of Melody's application for adjustment of status, Plaintiffs brought the present action.

**STANDARD**

The Federal Rules of Civil Procedure provide for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

///

4

One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Rule 56 also allows a court to grant summary adjudication on part of a claim or defense. See Fed. R. Civ. P. 56(a) ("A party seeking to recover upon a claim...may...move...for a summary judgment in the party's favor upon all or any part thereof."); see also Allstate Ins. Co. v. Madan, 889 F. Supp. 374, 378-79 (C.D. Cal. 1995); France Stone Co., Inc. v. Charter Township of Monroe, 790 F. Supp. 707, 710 (E.D. Mich. 1992).

The standard that applies to a motion for summary adjudication is the same as that which applies to a motion for summary judgment. See Fed. R. Civ. P. 56(a), 56(c); Mora v. ChemTronics, 16 F. Supp. 2d. 1192, 1200 (S.D. Cal. 1998).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. at 323 (quoting Rule 56(c)).

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

///
///

5

In attempting to establish the existence of this factual dispute, the opposing party must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(e).  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of Western Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  Stated another way, "before the evidence is left to the jury, there is a preliminary question for the judge, not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 14 Wall. 442, 448, 20 L. Ed. 867 (1872)).  As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts....Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 586-87.

///

///

///

6

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence. See T.W. Elec. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630-631 (9th Cir. 1987), citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

**I.  JURISDICTION**

Plaintiffs seek declaratory relief identifying the rights and duties of parties as well as a finding that Defendants' denial of Plaintiffs' petition for adjustment of status was based upon an incorrect application of law. (Pls.' Compl. 8:18-21) Plaintiffs further request that this Court compel Defendants to complete adjudication of Melody West's application for lawful permanent residence. (Pls.' Compl. 8:22-24)

///
///
///

1    To the extent that Plaintiffs' request for relief asks this
2 Court to mandate that Defendants commence proceedings, adjudicate
3 cases, or execute orders relating to removal, the Court lacks
4 jurisdiction to do so.  8 U.S.C. § 12562(g).  Moreover, this
5 Court lacks jurisdiction to review a discretionary denial of
6 adjustment of status under 8 U.S.C. § 1255.  See 8 U.S.C.
7 § 1252(a)(2)(B)(I).

8    However, the Court does retain jurisdiction to decide, as a
9 matter of law, whether an alien is statutorily eligible for
10 adjustment of status.  See 8 U.S.C. § 1252(a)(2)(D); Ortega-
11 Cervantes v. Gonzales, 501 F.3d 1111, 1113 (9th Cir. 2007)
12 (citing Freeman v. Gonzales, 444 F.3d 1031, 1037 (9th Cir. 2006).
13 It is the legal question of eligibility that is at issue here.

14    Melody's eligibility for adjustment of status to that of a
15 person admitted for permanent residence is guided by 8 U.S.C.
16 § 1255 (a, which states:

> The status of an alien who was inspected and admitted
> or paroled into the United States... may be adjusted by
> the Attorney General, in his discretion and under such
> regulations as he may prescribe, to that of an alien
> lawfully admitted for permanent residence if (1) the
> alien makes an application for such adjustment, (2) the
> alien is eligible to receive an immigrant visa and is
> admissible to the United States for permanent
> residence, and (3) an immigrant visa is immediately
> available to him at the time his application is filed.

23 Therefore, eligibility for discretionary review hinges on
24 inspection and admittance or parole, an application,
25 admissibility and eligibility for a visa, and immediate
26 availability of a visa at the time of application.
27 ///
28 ///

Defendants denied Melody's application on two alternate grounds: 1) Melody was not "paroled" into the United States within the meaning of 8 U.S.C. § 1255, and 2) Melody was inadmissable under 8 U.S.C. § 1182(a)(6)(C)(I) as a result of misrepresentations made to border officials on January 3, 2008. Both of these grounds touch on Plaintiffs' prerequisite eligibility for review, and are not a result of discretionary review itself. Accordingly, this Court holds jurisdiction over Plaintiffs' challenge to Defendants' denial of Melody's application.

**II. PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Plaintiffs bring their Motion for Summary Judgment on the grounds that the doctrine of *res judicata* bars Defendants from using allegations of fraud as a basis for denying Melody's application for adjustment of status. Plaintiffs argue that because Defendants initially charged Melody with fraud in violation of 8 U.S.C. § 1182(a)(6)(C)(I), but then withdrew those charges during removal proceedings, that Defendants are now precluded from pointing to the same events of alleged fraud in denying her application.

However, Plaintiffs' *res judicata* argument addresses only one of two alternate grounds Defendants provided for her denial. While the Defendants deemed Melody inadmissable based on a finding of fraud, they alternatively found Melody ineligible for adjustment based on a finding that she was not "paroled" within the meaning of 8 U.S.C. § 1255.

9

Plaintiffs have failed to substantively address this issue of parole.  In moving for summary judgment, Plaintiffs have failed to meet their initial burden of identifying any portion of the record which demonstrates that Melody is in fact "paroled" within the meaning of 8 U.S.C. § 1255.  Without meeting such burden, Plaintiffs cannot be said to be entitled to judgment as a matter of law.  Accordingly, Plaintiffs' Motion for Summary judgment is denied.

**III. DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT**

Defendants concurrently move for summary judgment on the grounds that 1) Melody West was never paroled into the United States thus she is statutorily ineligible to adjust status, and 2) the evidence in the record support a finding of inadmissability-namely that Melody misrepresented herself to border officials on January 8, 2008.  To obtain summary judgment Defendants need only make a favorable showing on either ground as either would render Melody ineligible for adjustment of status.

**A.   Parole**

To qualify for adjustment of status, an alien must be "inspected and admitted or paroled into the United States". 8 U.S.C. § 1255(a).  Defendants argue that Melody was not paroled, but rather "conditionally released" pursuant to INA § 236, 8 U.S.C. § 1226, which is not "parole" for the purpose of adjustment of status.

10

In making this argument, Defendants rely on the Ninth Circuit's ruling in <u>Ortega-Cervantes v. Gonzales</u>, 501 F.3d 1111 (9th Cir. 2007).

In <u>Ortega-Cervantes</u> the Ninth Circuit outlined the distinctions between "parole", as defined by 8 U.S.C. § 1182(d)(5)(A), and "conditional parole," as defined by 8 U.S.C. § 1226(a). The Court ultimately held that the applicant at issue had been conditionally paroled and that, as such, he was not eligible for adjustment of status. <u>Id</u>. at 1120. However in determining whether the applicant was "paroled" or "conditionally paroled" the Court looked to several factors, including the fact the applicant's release was conditioned on reporting back to the INS following testimony in criminal proceedings, that none of the forms issued to applicant made reference to "parole into the United States," and immigrant officials did not issue the applicant an I-94 card, which is typically given to § 1182(d)(5)(A) parolees. <u>Id</u>. at 1115.

Here, although Defendants summarily state that Melody was conditionally paroled under 8 U.S.C. § 1226, and thus ineligible for adjustment of status, they fail to point to any evidence in the record to warrant such a designation. Defendants cite to the Administrative Record at pages 30 and 329 as verifying their proposition, however, neither citation supports a finding of conditional parole. The Record at 30 provides the currently disputed Notice of Decision denying Plaintiffs' application for adjustment. However, the Decision itself fails to identify any factors suggesting that Melody should be deemed "conditionally paroled."

11

The Record at 329 provides a copy of the I-94 card issued to Melody.  However, the court in Ortega-Cervantes identify the I-94 cards as being typically given to § 1182(d)(5)(A) parolees, which *are eligible* for adjustment of status.  Ortega-Cervantes, 501 F.3d at 1115.

Without factual support for their allegations, Defendants have done little more than state a legal conclusion. Consequently, Defendants have failed to show that they are entitled to summary adjudication on the issue of Melody's ineligibility for adjustment of status as a "conditional parolee."

**B.   Inadmissability**

Pursuant to 8 U.S.C. § 1255(a), an inadmissable alien is ineligible for adjustment of status.  In denying Melody's application for adjustment, Defendants found Melody inadmissable under 8 U.S.C. § 1182(a)(6)(C) which states:

> Any alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admission into the United States or other benefit provided under this chapter is inadmissible.

Defendants point to Melody's initial misrepresentations to border officials on January 3, 2008 as the basis for her inadmissability.  Defendants argue that the administrative record fully support their finding, and therefore they are entitled to summary judgment.

///
///

12

1    However, Plaintiffs' Complaint alleges that Melody's
2 misrepresentations occurred in the course of ten hours of
3 interrogation during which time she was separated by her father
4 and eventually became despondent.  (Pls.' Compl. 1-13)
5 Defendants respond to these allegations by arguing that
6 "[n]othing in the record suggests deviation from standard border
7 practices."  Regardless of its merits, the suggestion of improper
8 questioning techniques is a factual determination material to the
9 issue of whether Melody "willfully" misrepresented information.
10 Although the Court acknowledges that a decision of
11 inadmissability is "conclusive unless manifestly contrary to
12 law," 8 U.S.C. § 1252(b)(4)(C), for the purposes of summary
13 judgment the Court finds that a dispute exists as to a genuine
14 issue of material fact.
15    As such, Defendants have failed to show that they are
16 entitled to summary adjudication on either the issue of parole or
17 the issue of inadmissability as a basis for denial of Melody's
18 application for adjustment of status.  Accordingly, Defendants'
19 Motion for Summary Judgment is denied.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

13

**CONCLUSION**

For the reasons set forth above, Plaintiffs' Motion for Summary Judgment (Docket No. 16) is DENIED.  Defendants' Cross-Motion for Summary Judgment (Docket No. 18) is also DENIED.

IT IS SO ORDERED.

Dated: July 29, 2010

_____
MORRISON C. ENGLAND, JR.
UNITED STATES DISTRICT JUDGE

14